THE STATE OF WASHINGTON, *Respondent*, v. LEROY E. THRIFT, *Appellant.*

*Warner, Pierce & Peden* and *B. Gray Warner,* for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *Michael P. Ruaek, Deputy,* for respondent.

JAMES, J.—Leroy Thrift was convicted of violating the Uniform Narcotic Drug Act. The information alleges that he "willfully, unlawfully and feloniously did . . . utter a false . . . prescription for a narcotic drug, to-wit: Numorphan." The criminal act charged is defined by RCW 69.33.380 (5):

No person shall make or utter any false or forged prescription or false or forged written order.

It is not disputed that Thrift presented a forged prescription for numorphan, a narcotic drug, to a pharmacist and asked that it be filled. When the pharmacist became suspicious, she called the doctor upon whose prescription form the prescription was written. When the doctor informed the pharmacist that he had not written the prescription, the sheriff was called and Thrift was placed under arrest while still in the drugstore.

Thrift first assigns as error "prejudicial misconduct of the deputy prosecuting attorney."

In his opening statement the prosecuting attorney told the jury that the state expected to prove that

The prescription . . . was signed by the sheriff and by Miss Hilton and then he want back outside and he was informed that there was a warrant for Mr. Thrift's arrest arising out of a Superior Court matter and he placed him under arrest for forgery of a prescription.

Thrift made no objection to the prosecuting attorney's statement, nor did he move for a mistrial.

The deputy sheriff who arrested Thrift testified:

After obtaining the prescription from the pharmacist, I went out to the patrol car at which time the other officer that accompanied me there informed me that there was a

Superior Court Bench Warrant outstanding for Leroy E. Thrift with the same date of birth. On this basis I placed Mr. Thrift under arrest using the Superior Court Bench Warrant and also informed him he was going to be held for investigation for uttering a forged prescription.

At this point Thrift asked that the jury be excused and moved for a mistrial. His ground was stated by his counsel to be "that the officer intentionally brought out in direct questions from counsel that the arrest on the Bench Warrant involved another case other than the one at bar, bringing up another crime."

The prosecuting attorney responded to the motion, saying: "I thought about that, your Honor, and I thought there might be a question on the nature of the arrest and because he wasn't arrested for uttering a forged prescription, I wanted to make sure on a probable cause on the record."

The trial judge denied the motion for a mistrial, but immediately upon resumption of the trial instructed the jury as follows:

Members of the jury, the witness has testified concerning a Bench Warrant and I am going to strike that portion of his testimony and I am going to instruct you at this time that you are to disregard it entirely. The man is charged with this offense and this offense only of uttering a forged prescription to obtain a narcotic drug. He is not charged with any other offense.

■ Both Thrift and the state have treated the claimed error as a question of "misconduct" on the part of the prosecutor. The prosecutor's explanation for presenting evidence that Thrift was in fact arrested under a bench warrant unrelated to the charge at hand suggests that "misconception" rather than "misconduct" would be a more accurate characterization. But, notwithstanding motivation, it was clearly improper and unnecessary to the prosecution to inform the jury that Thrift was arrested for an unrelated offense.

A defendant must be tried for the offense charged in the indictment or information. To introduce evidence of an unrelated crime is grossly and erroneously prejudicial,

unless the evidence of the unrelated crime is admissible to show motive, intent, the absence of accident or mistake, a common scheme or plan, or identity. These exceptions are not necessarily exclusive; in numerous cases cited, we have pointed out that the true test of admissibility is that the evidence of other criminal offenses must be relevant and necessary to prove *an essential ingredient* of the crime charged.

*State v. Dinges,* 48 Wn.2d 152, 154, 292 P.2d 361 (1956).

It was likewise improper for the officer to testify that he arrested Thrift for another charge, and the trial judge properly instructed the jury to disregard the testimony. Was the denial of Thrift's motion for a mistrial nevertheless error?

■  Error requiring a new trial must be "prejudicial."

The rule is now definitely established in this state that the verdict of the jury in a criminal case will be set aside and a new trial granted to the defendant, because of an error occurring during the trial of the case, only when such error may be designated as prejudicial. [Citations.]

*State v. Martin,* 73 Wn.2d 616, 627, 440 P.2d 429 (1968).

■  The testimony of the arresting officer confirmed the prosecutor's opening statement. Had Thrift made timely objection to the opening statement, the trial judge could have declared a mistrial and called for a new jury panel. But the right to claim error is usually lost by a failure to afford a trial judge the opportunity to timely correct an error in an opening statement.

Unless the misconduct of counsel in his opening statement is so flagrant, persistent and ill-intentioned, or the wrong inflicted thereby so obvious, and the prejudice resulting therefrom so marked and enduring, that corrective instructions or admonitions clearly could not neutralize their effect, any objection to such misconduct of counsel or error in the opening statement is *waived* by failure to make adequate timely objection and request for a corrective instruction or admonition. [Citations.]

(Italics ours.) *State v. Morris,* 70 Wn.2d 27, 33, 422 P.2d 27 (1966).

■  The decision of a trial judge as to the adequacy of

an instruction to disregard testimony vis-a-vis the granting of a new trial is one which is especially pervaded with a large measure of judicial discretion. The trial judge can impartially observe and appraise the impact of inadmissible testimony upon the jury. His discretionary judgment that a corrective instruction and admonition effectively cures an error should be respected by the appellate court unless the record demonstrates that beyond a reasonable doubt the refusal to grant a new trial denied the defendant a fair trial. *State v. Whetstone*, 30 Wn.2d 301, 191 P.2d 818 (1948); *State v. Van Luven*, 24 Wn.2d 241, 163 P.2d 600 (1945).

We hold that the denial of Thrift's motion for a mistrial was not error.

All of Thrift's further assignments of error are addressed to his assertion that the state failed to allege and failed to prove scienter, a necessary element of the crime.

■ Scienter is guilty knowledge. Thrift's defense was that his attempt to use the forged prescription was an innocent act on his part and that he was merely doing a favor for a friend.

We agree with Thrift's assertion that guilty knowledge is a necessary element of the crime with which he was charged. The state does not disagree but asserts that scienter was in fact alleged and proved although neither the word "knowingly" nor the phrase "with knowledge" appears in either the information or in the trial judge's instructions to the jury.

Thrift points out that the statutory definition of the general crime of uttering a forged instrument uses the words "knowing the same to be forged . . . and with intent to defraud, shall utter, . . ." RCW 9.44.060.

■ Thrift's alleged criminal act is tersely proscribed in the Uniform Narcotic Drug Act: "No person shall . . . utter any . . . forged prescription . . ." for a narcotic drug. RCW 69.33.380(5). Trafficking in narcotic drugs is unquestionably conduct involving moral turpitude. *State v. Hennings*, 3 Wn. App. 483, 475 P.2d 926 (1970). Crimes

which involve moral turpitude are categorized as crimes mala in se. *State v. Turner*, 78 Wn.2d 276, 474 P.2d 91 (1970). Unless clearly eliminated by the statute which defines a crime malum in se, scienter is a necessary and implied element. *Morissette v. United States*, 342 U.S. 246, 96 L. Ed. 288, 72 S. Ct. 240 (1952); *State v. Turner, supra.*

■ That the state recognized the necessity of charging and proving scienter is demonstrated by the use of the words "willfully, unlawfully and feloniously . . ." in the information. Likewise, the trial judge instructed that it was the state's burden to prove beyond a reasonable doubt that Thrift "willfully, unlawfully and feloniously did . . . utter a false or forged prescription . . ." The trial judge further instructed that "to utter" meant "to offer, whether accepted or not, a *forged* instrument, with the representation, by words or actions, that the instrument is genuine." (Italics ours.) He told the jury that the words "willfully, unlawfully and feloniously . . ." mean "intentionally and purposely, but not accidentally, . . ." and that a "forged" prescription was one which was not genuine but was one which was false or counterfeited in some manner. Finally, the jurors were admonished that the instructions were to be read together and considered as a whole.

We agree with Thrift's counsel that better practice on the part of the prosecuting attorney would utilize the suggested general form of information found in RCWA 9.44.060, following the notes of decisions, at 312. But it is clear that the information did charge Thrift with guilty knowledge. Likewise, the trial judge did effectively (though using traditional and unnecessarily legalistic phraseology) instruct the jurors that before Thrift could be found guilty, they must be convinced beyond a reasonable doubt that he intentionally and knowingly attempted to obtain narcotic drugs by the use of a forged prescription.

The judgment is affirmed.

FARRIS, A.C.J., and SWANSON, J., concur.