[No. 2623-1.  Division One.  December 23, 1974.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL JAMES RICONOSCIUTO, *Appellant*.

*Williams, Lanza, Kastner & Gibbs* and *Gerald A. Palm,* for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *Richard H. Blacklow, Deputy,* for respondent.

CALLOW, J.—The defendant was charged with grand larceny. The State introduced evidence to show that the defendant had arranged for a man named Pearson to burglarize a residence and deliver the property to be stolen to him. There was testimony that following a burglary of the resi-

dence much of the stolen property was in the hands of the defendant, that the defendant had admitted he had hired Pearson to steal the property from the residence, and that the defendant had paid Pearson with drugs for committing the burglary. The defendant testified in his own behalf and admitted possessing the stolen property. However, the defendant denied knowing Pearson and contended he had received the property in payment for a debt due him from the owner of the residence. The defendant's story was supported by a witness who said he had gone with the defendant to the house to pick up the property to satisfy the alleged debt. The defendant also attempted to show that a federal investigation of an alleged conspiracy to manufacture drugs supposedly involving the defendant and others was underway, and a number of the State's witnesses who were possible co-conspirators were fabricating their testimony to obtain favorable treatment in the federal case. The defendant further testified at length about his accomplishments and business success, apparently to show that he was a person unlikely to commit larceny. The appeal arises from a jury verdict finding the defendant guilty.

The issue raised on appeal challenges the cross-examination of the defendant which inquired whether he had filed income tax returns for the period of 1968-72. Defense counsel objected to the prosecution asking questions about the subject claiming such to be a wrongful excursion into a collateral matter but was overruled. At one point during argument, the prosecutor stated to the court in the presence of the jury:[1]

> Your Honor, I think the State can show through his testimony he has indicated that his business ventures were successful, that he was very successful on a contract basis. The State will show that no income tax returns were filed and he has never reported any income to the I.R.S. I think we can substantiate it through the

[1]This conduct cannot be passed without comment lest our lack of comment be taken as tacit approval. The statement should have been made in the absence of the jury.

testimony of Mr. Swanson from the Department of Internal Revenue Service which seems to me would go directly to his testimony as to how successful he has or has not been with these particular groups and with the systems he has developed if he has not made any income off of them.

On redirect examination, the defendant testified about his dealings with the Internal Revenue Service and about a lien placed upon some of his possessions pursuant to a claim for unpaid taxes. The State proposed to call in rebuttal an IRS agent to testify that no tax returns had been filed during this period. This proposal was made in the absence of the jury, and the proferred testimony was not admitted on the ground that it was an attempt to impeach on a collateral matter. The defendant requests a new trial contending it was error for the State to have inquired on cross-examination whether he had failed to file federal income tax returns. The trial court permitted the inquiry "as it may relate . . . into the defendant's assets."

The failure to file an income tax return may or may not be evidence of a prior act of misconduct. Filing may not have been required in the first instance or reasons may exist to excuse nonfiling. If evidence of nonfiling were admitted to impeach a defendant under such circumstances, the jury might infer, without any proper basis, that the defendant was unworthy of belief. The injustice of permitting such a possibility is apparent. Likewise, it is the rule that even if the failure to file was culpable (*see* 26 U.S.C. § 7203; 35 Am. Jur. 2d *Federal Tax Enforcement* § 113, 114 (1967)), the introduction of evidence of such a prior act of misconduct may not be inquired into to lessen the defendant's credibility. *McLain v. National Mut. Cas. Co.*, 28 So. 2d 680, 683 (La. App. 1946). In *United States v. Amabile*, 395 F.2d 47, 50 (7th Cir. 1968), it was said:

> [T]he credibility of a witness may not be impeached by showing that he has been arrested and indicted. Michelson v. United States, 335 U.S. 469, 482, 69 S.Ct. 213, 93 L.Ed. 168; United States v. Bolden, 355 F.2d 453, 457 (7th

Cir. 1965), certiorari denied, 384 U.S. 1012, 86 S.Ct. 1919, 16 L.Ed.2d 1018; Wigmore, op cit., § 980a. This principle applies *a fortiori* to a federal tax investigation that has not resulted in charges being brought against the witness.

It follows from this enunciated principle that, absent other circumstances, showing a failure to file tax returns is not a proper attack upon ordinary credibility.

The general maxim is that a defendant must be tried for the offense with which he has been charged. *State v. Goebel*, 40 Wn.2d 18, 240 P.2d 251 (1952); *State v. Goebel*, 36 Wn.2d 367, 218 P.2d 300 (1950). Prior acts of misconduct are admissible as evidence of the likelihood that the defendant committed the crime charged only under specific exceptions such as where such evidence shows motive, intent, absence of accident or mistake, common scheme or plan, or identity. *State v. Mott*, 74 Wn.2d 804, 447 P.2d 85 (1968); *State v. Dinges*, 48 Wn.2d 152, 292 P.2d 361 (1956). Illustrative of this principle is *United States v. Kaufman*, 453 F.2d 306 (2d Cir. 1971), where evidence of a false statement in a tax return was admitted as evidence of the defendant's penchant for signing documents which contained false statements.[2] In addition, the prosecution may introduce evidence of an act which is an inseparable part of the crime charged or is relevant and necessary to prove an essential ingredient thereof. *State v. Mack*, 80 Wn.2d 19, 490 P.2d 1303 (1971); *State v. Lampshire*, 74 Wn.2d 888, 447 P.2d 727 (1968); *State v. Niblack*, 74 Wn.2d 200, 443 P.2d 809 (1968). The customary rule forbids impeachment by evidence of prior acts of misconduct whether the witness is a party to the action or has been called to testify by a party. *State v. Lampshire, supra*; *State v. Emmanuel*, 42 Wn.2d 1, 253 P.2d 386 (1953). The challenged questioning

[2]Evidence of prior failure to report, of consistent understatement of tax liability, or prior understatements of income are admissible as evidence of willfulness or intent in prosecutions for evasion of income taxes. *Ballantyne v. United States*, 293 F.2d 112 (5th Cir. 1961); *United States v. Alker*, 260 F.2d 135 (3d Cir. 1958); *Palermo v. United States*, 254 F.2d 130 (9th Cir. 1958).

was not permitted, however, as impeachment of the defendant's credibility by allowing inquiry into prior misconduct merely because the defendant was on the witness stand but was admitted to contradict his claims concerning his personal dealings.

The record of the defendant's testimony in his own behalf contains many pages about his electronics and sound reproduction business dealings prior to the date of the burglary. The responses to the questions asked on cross-examination indicate that only two income tax returns were filed in the name of one of the corporations through which he did business during the period 1968-72 and that the defendant filed only one personal income tax return during the same period.

■ ■ When a defendant opens up subject matter in his own defense, the cross-examination may probe into the various phases of the subjects developed on direct. *State v. Hayes*, 73 Wn.2d 568, 439 P.2d 978 (1968); *State v. Solomon*, 5 Wn. App. 412, 487 P.2d 643 (1971). The Washington rule does not confine cross-examination to the questions asked but permits the cross-examiner to explore and inquire into the subjects discussed on direct examination. *Wilson v. Miller Flour Mills*, 144 Wash. 60, 256 P. 777 (1927). When a defendant testifies to his own good conduct, he may be cross-examined about specific acts of misconduct unrelated to the crime charged. *State v. Bauman*, 77 Wn.2d 938, 468 P.2d 684 (1970). When the defendant introduced evidence to support his claim of business success, inquiry was permissible into facts from which the inference could be drawn that he was not as successful as self-portrayed. *State v. Gefeller*, 76 Wn.2d 449, 458 P.2d 17 (1969). Though the failure to file an income tax return may or may not be an act of misconduct, a reasonable inference is raised that one claiming business success would have reportable income. By injecting his good business practices and claimed achievements into the direct examination, the defendant invited cross-examination on the subject. *State v. Donaldson*, 76 Wn.2d 513, 458 P.2d 21 (1969). The situation is not

unlike that in *State v. Renneberg*, 83 Wn.2d 735, 522 P.2d 835 (1974), where the court determined that the defendant's direct testimony was an attempt to "paint a picture of a person most unlikely to commit a grand larceny" and, therefore, the defendant sufficiently opened up the area to allow the State to contradict that testimony by showing his drug addiction. The questions asked and the answers elicited in the main attacked the claimed success of the defendant's business enterprises rather than intimating that he was unworthy as a witness by showing an act of misconduct in failing to file tax returns. The force of the cross-examination as revealed by a reading of the defendant's total testimony was directed to the former area and not the latter. The control of the cross-examination of the defendant was within the discretion of the trial court. We do not find an abuse of that discretion from the record. *State v. Miles*, 77 Wn.2d 593, 464 P.2d 723 (1970); *State v. Robideau*, 70 Wn.2d 994, 425 P.2d 880 (1967). *See also Kaminsky v. Blackshear*, 108 Ga. App. 492, 133 S.E.2d 441 (1963).

The judgment is affirmed.

JAMES and WILLIAMS, JJ., concur.

Petition for rehearing denied March 13, 1975.